FILED
2023 Aug-15  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| **JANE DOE I; and JANE DOE II,** individually and on behalf of the class of persons described herein. | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) **CASE NO:** _____ |
| **SHANLEE, INC. d/b/a FANTASIA GENTLEMEN'S CLUB; and SHANNON RELIFORD** | ) ) ) ) |
| **Defendants.** | ) ) |

## COLLECTIVE ACTION COMPLAINT

Jane Doe I and Jane Doe II (sometimes referred to collectively as "Plaintiffs"), on behalf of themselves and the class described below, state the following as their Complaint against Shanlee, Inc. d/b/a Fantasia Club ("Fantasia" or "Fantasia Club") and Shannon Reliford, on behalf of themselves and similarly situated employees described herein.

## I.  INTRODUCTION

Plaintiffs were exotic dancers/entertainers at an establishment known as Fantasia in Madison County, Alabama. Fantasia is located at 1066 Memorial Parkway, Huntsville, AL 35803. This is a claim brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ["FLSA"] for failure to pay minimum

wages, and for illegally confiscating monies earned from the performance of exotic dances, however they are characterized.

Defendants willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint. Defendants willfully failed to pay Plaintiffs the minimum wages they were entitled to under applicable Federal laws. Additionally, Defendants unlawfully require dancers to disgorge monies given to them by patrons, effectively forcing them to split them with non-tipped employees.

Plaintiffs bring this action on behalf of themselves and other similarly situated employees seeking damages, back pay, liquidated damages, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.  <u>JURISDICTION AND VENUE</u>

1.   This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

2.   Fantasia's annual sales exceed $500,000, and it employs more than two persons in commerce, so the FLSA applies. 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

3.    The venue is proper in this District pursuant to 28 U.S.C § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

2

### III.   THE PARTIES

4.      Jane Doe I is a resident of Jefferson County, Alabama, and is over the age of nineteen (19). Jane Doe I worked as an exotic dancer at Fantasia from July of 2021 through December of 2021.

5.      Jane Doe II is a resident of Madison County, Alabama, and is over the age of nineteen (19). Jane Doe II worked as an exotic dancer at Fantasia from January or February of 2021 until approximately March of 2023.

6.      Shanlee, Inc. d/b/a Fantasia is an Alabama corporation operating a nightclub in Madison County, Alabama, called Fantasia. This club features exotic dancing, and has operated since at least 2001.

7.      Shannon Reliford is an individual, over the age of nineteen (19) years, residing in Madison County, Alabama, who at all pertinent times directed the terms and conditions of employment for exotic dancers at Fantasia.

### IV.   FACTUAL ALLEGATIONS

#### A.    Facts Relating to Fantasia Gentlemen's Club.

8.      Fantasia has operated its location on Memorial Parkway in Huntsville, Alabama since before 2021.

9.      Fantasia is managed by a management team headed by Ms. Reliford. Ms. Reliford, on behalf of management, makes policy as it relates to exotic dancers at the location.

**B.**    **Facts Relating To Liability of Shannon Reliford.**

10.    Shannon Reliford, at all times pertinent to the case, dominated the operation of Fantasia. Shannon Reliford set and enforced all policies with regard to the terms and conditions of employment for exotic dancers.

11.    Shannon Reliford set each policy related below regarding work hours, tip outs, payment for private dances, and any other requirements of exotic dancers at Fantasia.

12.    Ms. Reliford has been at all times relevant to this action in a position to control the work activities of Plaintiffs  and the other exotic dancers at the Fantasia. Ms. Reliford at all times had the power to, and did on occasion, hire and fire exotic dancers at Fantasia. Ms. Reliford, at all pertinent times, made the management decisions regarding exotic dancers in implementing and enforcing the hours, work schedules, and working conditions of the exotic dancers outlined herein.

13.    Ms. Reliford determined how exotic dancers such as Plaintiffs would be paid, and how tip-outs and dance fees would be split and accounted for. Finally, Ms. Reliford maintained what employment records were kept at Fantasia.

14.    In short, Ms. Reliford directed all of the terms and conditions of Ms. Plaintiffs' employment.

**C.**     **Facts Relating To Working Conditions For Exotic Dancers at Fantasia.**

15.     Plaintiffs and the Class described below have been intentionally misclassified by Fantasia as independent contractors.

16.     Plaintiffs and the Class have not been paid a minimum wage by Fantasia. In fact, Plaintiffs and the Class have not paid any hourly wages by Defendants.  All monies paid to the dancers come directly from the patrons at the Club, as described herein.

17.     No exception to the FLSA applies.

18.     At all relevant times, Defendants directly and indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs and the Class.

19.     Plaintiffs and the Class have incurred, and continue to incur, financial loss, injury and damage as a result of the business practices of Defendants in misclassifying exotic dancers as independent contractors and failing to pay a minimum wage.

20.     Plaintiffs and the Class generate their income solely through the monies received from customers for the performance of exotic dances.

21.     All monies that Plaintiffs received from customers in the performance of exotic dances were, as described below, either tips or service fees.  In either case,

as described below, Defendants had no right to keep any portion of the monies paid. These payments were given by patrons solely for services performed by Plaintiffs and the Class and therefore, if considered tips, belong to Plaintiffs and the Class, not Defendants.

22.    Alternatively, the payments Plaintiffs received from patrons in relation to exotic dances were service charges not taken into Defendants' gross receipts, and then paid out to Plaintiffs.

23.    Plaintiffs may have been considered tipped employees, as they were engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips, if dance fees are considered tips. No tip credits offsetting any minimum wages due, however, are permitted. Therefore, Plaintiffs are entitled to: (i) minimum wages for all work performed; and (ii) the full amount of any monies given to them by customers for the performance of exotic dances.

24.    Defendants' misclassification of Plaintiffs was specifically designed to deny Plaintiffs' fundamental rights as employees to receive minimum wages, to demand and retain portions of tips paid by customers, and to enhance Defendants' profit margin at the expense of the dancers.

25.    The misclassification of Defendants was willful.

26.    Defendants knew or should have known that Plaintiffs and the Class were improperly misclassified as independent contractors.

27.    The determining factor as to whether a worker is an employee or independent contractor under the FLSA is not the workers' or employees' election, subjective intent, or any contract.  Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947).  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for themselves and truly independent, or rather is economically dependent upon finding employment in others.  In this case, Plaintiffs and the Class were dependent upon Fantasia to earn a living.

28.    Workers cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment.  Nor can workers agree to be paid less than the minimum wage. Despite this, Defendants' unfairly, unlawfully, fraudulently and unconscionably coerced Plaintiffs and the Class to waive their statutory rights and elect to be treated as independent contractors.

29.    Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (1) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in

performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

30.    The totality of circumstances surrounding the employment relationship between Defendants and Plaintiffs and the Class establishes economic dependence by Plaintiffs and the Class on Defendants.  Here, Plaintiffs and the Class were not in business for themselves and truly independent, but rather were economically dependent upon finding employment with Defendants. Plaintiffs and the Class did not engage in an occupation or business distinct from that of Defendants. To the contrary, Plaintiffs and the Class were and are the basis for the business of Fantasia. Without exotic dancers, Fantasia cannot exist as "Gentlemen's Clubs."

31.    Fantasia obtains the customers who seek out exotic dance entertainment and provides the workers who conduct the exotic dance services.  Defendants retain pervasive control over the Club's operations as a whole, and Plaintiffs and the other dancers' duties are an integral part of those operations.

**D.    <u>Degree of Control Exercised by Defendants</u>.**

32.    Plaintiffs and the other dancers do not exert control over any meaningful part of business operations, and do not stand as separate economic entities from Fantasia.  Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other dancers at Fantasia. Indeed, Defendants require Plaintiffs to dance under a stage name.

8

33.    Plaintiffs and the Classes economic status is inextricably linked to conditions over which Fantasia have complete control, including but not limited to, advertising and promotion, the atmosphere and surroundings at the Club, the flow of customers into the Club, and the customer volume.

34.    Fantasia employs guidelines and rules dictating the way in which Plaintiffs and the other dancers must conduct themselves while working.  These guidelines include, but are not limited to:

    a.    Requiring the dancers to report for work at specific times, and stay specific hours.  If the dancers left early or arrived late, they would be forced to pay the club extra;

    b.    Requiring the payment of a "tip-out" for each dancer for each shift worked;

    c.    Requiring a particular number of shifts per week;

    d.    Setting the prices for private dances;

    e.    Confiscating some of the money earned by the dancers for private dances; and

    f.    Controlling when the dancers will be on stage.

35.    Defendants' control the conduct of dancers while at work, including how dances are to be performed, how often the dancers are to be on stage performing, and requiring dancers to mingle with patrons in a manner which supports Defendants' general business plan, but to no benefit of the dancers, all are indicia that the dancers were employees, not independent contractors.

36.    Defendants require dancers to literally pay management a fee to work there.  Each dancer had to pay to the Club, at some point during her shift, a sum of

money, usually $40.00, just to work that shift.  This payment is commonly referred to as a "tip-out." The amounts sometimes fluctuated, increased at random periods of time.  If the tip-out was not paid, the dancer would be fined, and eventually fired. If the dancer did not pay her tip out at the beginning of her shift, it would be taken out of dance fees earned.

37.    First, Plaintiffs and the class were required to be scheduled for, and to work, four shifts per week. If they did not work the required number of shifts, they would be fined, and had to pay the fine before they could work again, or have it taken out of dance fees earned while they were working.

38.    The requirement to work the required shifts could be enforced with particular cruelty. In Jane Doe II's case, she took time off to attend to a family member who was in the hospital. She was fined over $500, to be paid over a number of shifts, for taking the time off.

39.    Defendants require that shifts commence at particular times for a minimum number of hours. The shifts were eight (8) hours, beginning at 6:00 for the night shift. Defendants require dancers to report to management at the beginning and end of each shift. If a dancer is late or absent for a shift or does not appear timely for her dance on stage, a dancer is subject to a monetary penalty.

40.     Dancers are required to complete the entirety of their shifts, and are not permitted to leave early without penalty.  In the event the dancer leaves a shift early, she is subjected to a monetary fine, usually $100.00.

41.     One element of a dancer's job is performing private exotic dances in a VIP room.  Defendants, not the dancers, establish a minimum rate that dancers must collect from patrons when performing exotic dances in the VIP room.  The schedule set by the Club for dances is as follows:

- Five (5) songs: customer charged $80.00, dancer keeps $20.00.

- Thirty minutes: customer charged $120.00, dancer keeps $40.00.

- The songs: customer charged $160.00, dancer keeps $60.00.

- One hour: customer charged $240.00, dancer keeps $100.00.

In each instance, the customer pays the Club directly, and the dancer is given a "ticket" which she can redeem for $20.00 at the end of her shift. If the dancer is due more than $20.00, she is given more "tickets" for example, for ten (10) songs, for which the dancer is entitled $60.00, she could get two tickets.

42.      If the dancer wants to leave early, then she forfeits the number of tickets equaling the fine.

**E.  Facts Negating Skill and Initiative of a Person in Business For Themselves.**

43.    Plaintiffs and the Class do not exercise the skill and initiative of a person in business for herself.

44.    Plaintiffs and the Class are not required to have any specialized or unusual skills to work, and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

45.    Plaintiffs and the Class do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors as they owned no enterprise, nor did they maintain separate business structures or facilities.

46.    Plaintiffs and the Class have no control over customers, nor did they actively participate in any efforts to increase the client base, profit, or to improve business in any capacity at Fantasia.

47.    A dancer's own initiative is limited to wardrobe, which is itself subject to final approval by Defendants, and how provocatively to dance, actions which are consistent with the status of an employee as opposed to an independent contractor.

48.    Plaintiffs were not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for themselves would have the authority to do.

**F.**   <u>**Facts Establishing Relative Investment**</u>.

49.   Plaintiffs and the Classes relative investment is minor when compared to the investment made by Fantasia.

50.   Plaintiffs and the Class make no financial investment in facilities, advertising, maintenance, sound system and lights, food, beverage, and other inventory.  All capital investment and risk belongs to Defendants.

51.   Plaintiffs and the Classes investment is limited to expenditures on wardrobe and make-up.  Absent Defendants' investment and provision of the club work environment, Plaintiffs would not have earned anything.

**G.**   <u>**Facts Establishing Opportunity for Profit and Loss**</u>.

52.   Defendants manage all aspects of the business operation, including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff.  Defendants provide all necessary capital to open and operate the business.

53.   Plaintiffs have no responsibility for any aspect of Fantasia's ongoing business risk.  Defendants secure all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses).  Fantasia alone is responsible for securing all necessary and appropriate insurance and licenses.  Defendants set the minimum

dance, tip, and other tip amounts to be collected from patrons, and establish the fee splitting policy for dances performed in the VIP rooms.

**H.    Facts Establishing Permanency.**

54.    Plaintiffs worked fairly regularly at Fantasia, as alleged above. Plaintiffs worked approximately four (4) shifts per week. If they did not work the required four (4) shifts, the dancers would be fined or not put on the schedule.

**I.    Facts Establishing Plaintiffs are Integral Part of Employer's Business.**

55.    Exotic dancers are critical to the success of Fantasia and Fantasia's very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

56.    The primary "product" or "good" Fantasia is in business to sell consists of dances performed by the exotic dancers.  Other goods sold by Defendants include drinks and food, which are served to patrons by waitresses and bartenders.

57.    Plaintiffs and the Class have been misclassified as independent contractors and should have been paid minimum wages at all times they worked.

**J.    Facts Establishing that Defendants' Acts Were Willful.**

58.    All of the actions described herein were willful, intentional and not the result of mistake or inadvertence.

59.     Defendants are and have been aware, or should be aware, that the FLSA applies to its business at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.

60.     Exotic dancers working under conditions similar to those employed at Fantasia have been determined to be employees under the wage and hour laws, not independent contractors.

61.     Defendants have been aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were Plaintiffs' sole property, rendering its tip-share, and tip-out scheme unlawful.

62.     Despite this notice of their violations, Defendants intentionally choose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum wages, and require dancers to split their tips in an effort to enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

63.     Jane Doe I was employed by Fantasia as an exotic dancer from approximately July of 2021 to December of 2021, and Jane Doe II was employed by Fantasia as an exotic dancer from approximately February of 2021 to approximately March of 2023.

64.     Plaintiffs were never paid an hourly wage, at all, by Defendants.

65.     Plaintiffs had to pay Defendants according to the schedule referenced above for private dances. Plaintiffs continued to have to pay a tip-out every time they worked at Fantasia of approximately $40.00, although the amount varied.

66.     Plaintiffs had to pay $1.00 for two songs to be played by the jukebox in rotation.

67.     Plaintiffs had to be on stage according to a rotation set by the club according to the time she checked in for her shift. This cut into time when they could be making money doing private dances. And they had to pay for the music to dance to, not the Club.

68.     Plaintiffs was required to work all shifts (4) per week, or pay fine or risk being fired.

69.     Plaintiffs and all of the other dancers were required to work eight (8) hour shifts; either the day shift or the night shift, every day. They were fined $100.00 for being late for a shift, or leaving early.

## V.   <u>INJURY AND DAMAGE</u>

70.     Plaintiffs were harmed, and incurred damage and financial loss as a result of Fantasia's conduct complained of herein.

71.     Plaintiffs and the Class were entitled to minimum wages and to retain all of the private dance tips and other tips they were given by patrons.  By failing to pay Plaintiffs minimum wages and interfering with their right to retain all of the dance

tips and other tips they were given by patrons, Defendants injured Plaintiffs, causing them financial loss, harm, injury and damage.

## VI. COLLECTIVE ACTION ALLEGATIONS

72.     Plaintiffs brings this action pursuant to 29 U.S.C § 216(b) of the FLSA on her own behalf and on the behalf of all similarly situated current and former exotic dancers working at Fantasia at any time within three years of the filing of this action.

73.     Excluded from the class are all the Defendants' executives, administrators, professional employees, and outside salespersons.

74.     A collective action under the FLSA is appropriate because under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are similarly situated to the named Plaintiffs.

75.     The workers Plaintiffs seeks to represent in this class include:

> All exotic dancers who worked at Fantasia in Madison County, Alabama, at any time within three years of the filing of this action.

76.     The putative class members are similarly situated to the named Plaintiffs because they worked in the same positions, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

77.     The working relationships between the Defendants and every putative class member are exactly the same. The key legal issue to the collective action, i.e.,

whether Defendants' classification policy and practice violated the FLSA, does not vary substantially from class member to class member.

78.    Plaintiffs estimates that the putative class, including both current and former workers over the relevant period, will include over 50 members. The precise number of the class members should be readily discernible from a review of Defendants' records.

## VII.  <u>CAUSES OF ACTION</u>

### COUNT I - VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages Against All Defendants)

79.    Plaintiffs hereby incorporate all of the preceding paragraphs as if fully stated herein.

80.    Shannon Reliford, as described above, because of the control she exercised over the dancers, is an "employer" as that term is defined by 29 U.S.C. § 203(d), and is thus individually liable.  Each claim under this Court is made against Ms. Reliford, individually, as well as against Fantasia.

81.    This claim arises out of Defendants' willful violation of the Fair Labor Standards Acts, 29 U.S.C. Sec. 201, et seq., for failure to pay a minimum wage to Plaintiffs to which they were entitled.

82.    At all relevant times, Defendants employed Plaintiffs and the Class within the meaning of the FLSA.

83.    At all relevant times, Fantasia was an enterprise whose annual business income was in excess of $500,000, pursuant to 29 U.S.C. § 203(5)(1)(A)(ii).

84.    The minimum wage provisions of the FLSA, 29 U.S.C. 201 et seq., apply to Fantasia to protect Plaintiffs.

85.    Pursuant to 29 U.S.C. § 206, Plaintiffs and the Class were entitled to be compensated at the rate of $7.25 per hour.

86.    29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

87.    Defendants failed to pay Plaintiffs and the Class the minimum wage set forth in 29 U.S.C. § 206, or any wages whatsoever.

88.    Defendants failed to pay Plaintiffs and the Class a minimum wage throughout the relevant time period because Defendants intentionally misclassified them as independent contractors.

89.    The amount paid to Plaintiffs by patrons in relation to private dances or other services performed were either service fees or tips, not wages.  In either case, they were improperly kept by Defendants.

19

90.    The private dance fees are paid directly to the dancers by customers, not to the Defendants. Thus, they cannot be wages.

91.    Courts have classified private dance fees paid by customers of exotic dance clubs as either tips or service fees.  In either case, Defendants cannot confiscate the private dance fees and they are due to be returned to Plaintiffs.  If the private dance fees are considered tips, then Fantasia has no right to them because under the FLSA an employer may not keep any portion of employees' tips . . ." 29 U.S.C. § 203(m)(2)(B).

92.    It could be argued that the private dance fees are service fees paid to the establishment.  However, in such a case, Defendants still would not be able to retain them, nor would they be able to claim such confiscated private dance fees as a credit against their minimum wage obligation.

93.    In order to take the private dance fees as a credit, Defendants would have to actually pay Jane Doe I and the other dancers, and then it would have to have both included in private dance fees in the gross revenues of the company, and then pay them out to the dancers.  This is not done.

94.    As a result, under any circumstance the amounts paid to Plaintiffs and the Class by patrons in relation to private table dances cannot be used to offset Fantasia's obligation to pay the Plaintiffs minimum wages due.  See Hart v. Rick's Cabaret, Int'l, 2013 U.S. Dist. Lexis 129130 (S.D.N.Y. Sept. 10, 2013) e.g., Reich v.

ABC/York-Estes Corp., 157 F.R.D. 668, 680 (N.D. Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); Reich v. ABC/York-Estes Corp., 1997 WL 264379 at *5-7 (N.D. Ill. 1997).

95.    Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips.  29 U.S.C. § 203(m).

96.    Neither of these conditions was satisfied.  Defendants did not inform Plaintiff of the provision of § 3(m) of the FLSA, 29 U.S.C. § 203(m), and Plaintiffs did not retain all the tips received.

97.    Fantasia did not notify Plaintiffs or the other dancers that their dance fees were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped employees because Defendants maintained as a business strategy that Plaintiffs and the other dancers were not due a minimum wage due to the classification as independent contractors.

98. Fantasia's requirement that Plaintiffs and the other dancers pay Defendants a portion of all dance fees and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers and managers was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

99. Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which Plaintiffs and the Class worked for Defendants, along with all applicable penalties, liquidated damages, and other relief.

100. Defendants' conduct in misclassifying Plaintiffs and the Class as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiffs and the Class were legally entitled to receive.

101. Plaintiffs and the Class seek damages in the amount of their unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper.

102. 12 U.S.C. § 211(c) provides in pertinent part:

(c)    Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such

records for such periods of time, and shall make such
reports therefrom to the Administrator as he shall
prescribe by regulation or order as necessary or
appropriate for the enforcement of the provisions of this
chapter or the regulations or orders thereunder.

103.  The Regulations, 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500, further

require that every employer shall maintain and preserve payroll or other records

containing, without limitation, the total hours worked by each employee each

workday and total hours worked by each employee each workweek.

104.  To the extent Fantasia failed to maintain all records required by the

aforementioned statutes and regulations and failed to furnish Plaintiffs

comprehensive statements showing the hours that they worked during the relevant

time period, it also violated the aforementioned laws causing Plaintiffs' damages.

105.  When the employer fails to keep accurate records of the hours worked

by its employees, the rule in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680,

687-688 66 St. Ct. 1187 (1946) is controlling.  That rule states:

> ...where the employer's records are inaccurate or
> inadequate ... an employee has carried out his burden if he
> proves that he has in fact performed work for which he
> was improperly compensated and if he produces sufficient
> evidence to show the amount and extent of that work as a
> matter of just and reasonable inference.  The burden then
> shifts to the employer to come forward with the evidence
> of the precise amount of work performed or with evidence
> to negative the reasonableness of the inference to be drawn
> from the employee's evidence.  If the employer fails to

produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

106.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." Id.

107.    Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

## **<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiffs, prays for an order for relief as follows:

a.    That the case be certified as a collective action;

b.    That notice be sent to similarly situate employees within the statutory period, and that those similarly situated employees be given opportunity to opt into this action;

d.    That Defendants be found liable to Plaintiffs;

e.      For nominal damages;

f.      For compensatory and actual damages;

g.      For restitution of all monies due Plaintiffs and disgorged profits from the unlawful business practices of Defendants;

h.      For all back pay, unpaid wages, and a refund of all tips, "rent," tip-outs, fines and other amounts paid by Plaintiffs;

i.      For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal wage and hour statutes and regulations and/or other laws;

j.      For accrued interest;

k.      For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

l.      For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

## **JURY DEMAND**

Respectfully submitted,


/s/ Brian M. Clark
Brian Clark
Attorney for Plaintiffs

**<u>OF COUNSEL</u>:**
Wiggins Childs Pantazis Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
Email: bclark@wigginschilds.com


SERVE EACH DEFENDANT AT THE FOLLOWING ADDRESS:

Shanlee, Inc. d/b/a Fantasia Gentlemen's Club
336 Prince Circle
Laceys Spring, AL 35754

Shannon Reliford
336 Prince Circle
Laceys Spring, AL 35754