FILED

2024 Jul-23  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANE DOE I, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, individually and on behalf of the class of persons described herein, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | Case No. 2:23-cv-1068-GMB |
| SHANLEE, INC. d/b/a Fantasia Gentlemen's Club, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Jane Doe I and Jane Doe II initially filed suit against Shanlee Inc. d/b/a Fantasia Gentlemen's Club and Shannon Reliford, on behalf of themselves and others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Doc. 1. Since the filing of the complaint, three other women—Jane Does III, IV, and V—have joined the case as plaintiffs. Docs. 20, 24, 38, 42. Before the court is the plaintiffs' Motion for Conditional Certification and to Facilitate Notice Pursuant to § 216(b) of the Fair Labor Standard Act. Doc. 40. The motion is fully briefed (Docs. 40, 40-1, 40-2, 40-3, 49, 53) and ripe for decision. For the following reasons, the motion is due to be granted in part. Specifically, the court will conditionally certify the class but will reserve a ruling on most aspects of the form of notice.

# I. FACTUAL BACKGROUND[1]

The plaintiffs worked as "exotic dancers/entertainers" at a club called the Fantasia Gentlemen's Club ("Fantasia") in Madison County, Alabama between 2021 and 2023. Doc. 1 at 1; Doc. 40-1 at 26, 36, 47; Doc. 40-2 at 2.  Fantasia was open Tuesdays through Saturdays. Doc. 40-1 at 27, 37, 48; Doc. 40-2 at 3.  There were approximately five to eight dancers working on weekdays and six to ten dancers working on weekends. Doc. 40-1 at 30, 40, 51; Doc. 40-2 at 6.

Fantasia scheduled its dancers to work four days during each week for either the day or night shift. Doc. 40-1 at 27, 37, 48; Doc. 40-2 at 3.  If a dancer was not on the schedule, she could not work. Doc. 40-1 at 27, 37, 48; Doc. 40-2 at 3.  If a dancer was late, she would either be prohibited from working or would be fined between $40 and $100 depending on the length of her tardiness. Doc. 40-1 at 27, 37, 48–49; Doc. 40-2 at 4.  If a dancer left her shift early, she would lose her job or, "[o]n rare occasions, if [she] had a real necessity to leave early, [she] could pay between $100–$150 to leave early." Doc. 40-1 at 28, 38, 49; Doc. 40-2 at 4.

Fantasia did not pay the dancers any wages. Doc. 40-1 at 27, 37, 48; Doc. 40-2 at 3.  Instead, the dancers "had to pay to work there" in the form of (1) a $50 "tip

---

[1] All the evidence before the court comes from the declarations of Jane Does I, II, III, and IV. There is no declaration from Jane Doe V since she joined the cause after the filing of the motion. The defendants did not submit any evidence with their brief in opposition to conditional certification.

out" for every shift worked and (2) a fee for each song played on the jukebox when the dancer was on stage. Doc. 40-1 at 27, 37, 48; Doc. 40-2 at 3. The dancers made money from tips while they were on the stage and when they performed private dances for customers. Doc. 40-1 at 28, 38, 49; Doc. 40-2 at 4. Fantasia controlled when the dancers were on stage and when they performed private dances, which were more lucrative. Doc. 40-1 at 31, 40, 52; Doc. 40-2 at 7. Fantasia and the dancer split the customers' payments for private dances as follows:

| Number of Songs/ Dances/Time | Total Payment | To Fantasia | To Dancer |
|---|---|---|---|
| 2 songs/dances | $50 | $40 | $10 |
| 5 songs/dances | $80 | $60 | $20 |
| 20 minutes | $120 | $80 | $40 |
| 10 songs/dances | $160 | $100 | $60 |
| 1 hour | $240 | $140 | $100 |

Doc. 40-1 at 28, 38, 49; Doc. 40-2 at 5. Fantasia posted this payment schedule on the wall near the VIP room. Doc. 40-1 at 28, 34, 38, 43, 49, 54; Doc. 40-2 at 5, 10. If a dancer did not pay the correct fees to the club, she would be fined, suspended, or terminated. Doc. 40-1 at 31, 40, 52; Doc. 40-2 at 7.

Fantasia did not retain any records of the dances performed by the dancers. Doc. 40-1 at 28, 38, 50; Doc. 40-2 at 5. And the dancers did not receive any paperwork or a pay stub from Fantasia. The plaintiffs estimate that if they worked the typical four days (two during the week and two on weekends), they would each make $1,600 per week while paying Fantasia $3,760 per week. Doc. 40-1 at 29, 39,

50; Doc. 40-2 at 6.

## II.  LEGAL STANDARDS

Section 216 of the FLSA permits "one or more employees" to bring an action "for and in behalf of himself or themselves and other employees similarly situated" against an employer to recover unpaid overtime wages. 29 U.S.C. § 216(b).  Unlike class actions under Federal Rule of Civil Procedure 23, the "[p]articipants in a § 216(b) collective action must affirmatively opt into the suit." *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1258 (11th Cir. 2008); *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Accordingly, "once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Morgan*, 551 F.3d at 1259.  The FLSA does not mandate specific opt-in procedures and the Supreme Court has confirmed the district courts' discretion, "in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The district courts within the Eleventh Circuit typically use a two-step process for managing § 216(b) collective actions. *See Hipp v. Liberty Nat'l Life Ins. Co*., 252 F.3d 1208, 1218 (11th Cir. 2001).  The first stage is the notice or conditional-

certification stage. *Id*.  This is when the district court decides whether to authorize notice of the action to potential class members based on the pleadings and any affidavits in the record. *Id*. at 1218.  Because the court will have limited evidence at this stage, the standard is lenient—the court merely asks whether there are other employees who wish to opt in and whether they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (quoting *Dybach v. Fla. Dep't of Corr*., 942 F.2d 1562, 1567–68 (11th Cir. 1991)).  This first inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218.  If the court conditionally certifies a class, the "putative class members are given notice and the opportunity to 'opt-in,'" and "[t]he action proceeds as a representative action throughout discovery." *Id.* (quoting *Mooney v. Aramco Servs. Co*., 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

After the parties develop a more robust record, the second stage generally results in the employer's motion for decertification. *Hipp*, 252 F.3d at 1218.  After the filing of a motion for decertification, the court determines whether the named plaintiffs and the opt-ins are similarly situated. *Id*.  The courts apply a less lenient standard at this second stage than at the conditional-certification stage. *Morgan*, 551 F.3d at 1261.  If the plaintiffs are not similarly situated, the court decertifies the

action, dismisses the opt-in plaintiffs without prejudice, and allows the named plaintiffs to proceed to trial on their individual claims. *Hipp*, 252 F.3d at 1218.

### III. DISCUSSION

**A.    Conditional Certification**

Using the two-tiered approach, the court considers (1) whether other employees exist who desire to opt-in and (2) whether the employees are similarly situated with respect to their job requirements and pay provisions. *See id*. at 1219.

#### *1.    Desire to Opt-in*

"The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four." *Lemming v. Sec. Forces, Inc*., 2010 WL 5058532, at *1 (M.D. Fla. 2010). "Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation." *Brooks v. A. Rainaldi Plumbing, Inc*., 2006 WL 3544737, at *2 (M.D. Fla. 2006); *see also Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012) (finding that "the existence of just one other co-worker who desires to join in is sufficient to rais[e] the Plaintiff's contention beyond one of pure speculation") (citation and internal quotation marks omitted); *Miller v. JAH, LLC*, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) (finding that the plaintiff's submission of an affidavit of a putative class member who stated that she would opt

in if given the opportunity satisfied the plaintiff's "lenient burden" to demonstrate that others desired to opt in).

The plaintiffs here cite to the record to support a finding that other employees desire to opt-in to this litigation. Specifically, they point to the three other plaintiffs who have joined through the two amendments to the complaint. *See* Docs. 24 & 42. Additionally, in their uncontroverted declarations, Jane Does I, II, III, and IV stated, "I know that there are others who would want to make the same decision that I did to join this case because the dancers I spoke with when I worked at the Club also voiced their dissatisfaction with the requirements I have laid out in this Declaration." Doc. 40-1 at 32, 42, 53; Doc. 40-2 at 8. This evidence satisfies the court that there are other potential class members who desire to opt-in. *See Bennett*, 880 F. Supp. 2d at 1283; *Miller*, 2018 WL 305819, at *3.

The defendants argue, however, that "[t]he creation of a collective class action—even a conditionally certified collective class action—requires a plaintiff to identify at least some opt-in plaintiffs." Doc. 49 at 6. The court disagrees. There is no statutory requirement that the plaintiffs name other dancers who will opt into the lawsuit. *See, e.g., Dreyer v. Baker Hughes Oilfield Ops., Inc*., 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (stating that there is no "statutory requirement" that "plaintiffs prove others are interested in opting in to the lawsuit"). Indeed, the vast majority of courts that have considered this argument have rejected it. *See id.*; *Green*

*v. Plantation of La., LLC*, 2010 WL 5256354, at *12 (W.D. La. Nov. 24, 2021) (noting that other "courts have found that such evidence is not essential for conditional certification"); *Shipes v. Amurcon Corp.*, 2012 WL 995362, at *8–9 (E.D. Mich. Mar. 23, 2012) (observing that "the Sixth Circuit has never required evidence that others will opt in before the certification decision can be made"); *Taillon v. Kohler Rental Power, Inc.*, 2003 WL 2006593, *3 (N.D. Ill. Apr. 29, 2003) (stating that there is no "independent requirement of proof of desire to join in the action for authorization of notice under § 216(b)"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (noting that "[r]esearch fails to reveal any court that has applied th[e] requirement" that "Plaintiffs must demonstrate that other potential class members intend to participate").  And, as the plaintiffs highlight in their reply, this requirement "would essentially force plaintiffs of their attorneys to issue their own informal notice or to otherwise go out and solicit other plaintiffs." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).  Moreover, requiring the plaintiffs to prove the identities of other plaintiffs who desire to opt in at the notice stage appears to conflict with the Supreme Court's admonition that the FLSA should "be liberally 'applied to the furthest reaches consistent with congressional direction.'" *Reab*, 214 F.R.D. at 629 (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)).

  Accordingly, the court finds that the plaintiffs have met the first requirement

for conditional collective action certification.  The court next considers the second requirement—that the employees are similarly situated with respect to their job requirements and pay provisions.

### 2.      *Similarly Situated*

The "similarly situated" requirement of 29 U.S.C. § 216(b) "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996).  To show that other employees are similarly situated for the purpose of the first-tier test for conditional certification, plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101).  And plaintiffs can meet the burden of showing members of a class are similarly situated by "'making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363–65 (M.D. Ala. 1999) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Morgan*, 551 F.3d at 1260 (stating that plaintiffs must demonstrate a "reasonable basis" for their contention that there are other similarly situated employees).

The plaintiffs here contend that they are similarly situated with the members of the putative class because they are all former exotic dancers who worked under

the same policies and pay practices at Fantasia.  Specifically, they claim that (1) Fantasia required each dancer to work four shifts per week and to stay for the entire shift or receive a fine; (2) Fantasia required each dancer to pay a "tip out" after each shift; (3) Fantasia and Reliford controlled the prices the dancers could charge for private dances; (4) Fantasia controlled when the dancers performed on stage, and in what rotation, which affected their ability to earn money from private dances; (5) Fantasia required the dancers to pay for their own songs on the jukebox; and (6) Fantasia controlled the dancers' wardrobe. Doc. 40-1 at 32, 41, 52–53; Doc. 40-2 at 8.

Based on these facts, the plaintiffs' declarations establish that the conditions of employment were uniform and that Fantasia treated each dancer alike.  The defendants have not submitted any evidence challenging these declarations.  Instead, the defendants argue that the "need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based" because "[e]mployment status is a complex and a fact-intensive inquiry, especially when distinguishing between employees and independent contractors." Doc. 49 at 8.  If this were the case, however, conditional certification in FLSA cases involving exotic dancers would be rare.  It is not.  Even a cursory search yields a number of cases involving similar allegations by exotic dancers. *See, e.g., Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781 (N.D. Ill 2015)

(collecting approximately two dozen cases conditionally certifying similar classes of exotic dancers).

Accordingly, based on the evidence before it, the court finds that the plaintiffs have established a reasonable basis for concluding that they are similarly situated for the purpose of first-tier consideration of conditional certification. *See Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101).

**B.   Notice**

The court next must address the procedures for providing notice to the putative class and the content and form of the notice. The defendants raise various objections to the plaintiffs' proposals for the notice process, including to the contact information they must provide, when they must provide it, the permissible methods for giving notice, and the contents of the proposed notice. Doc. 49 at 10–13. In light of the numerous objections, the court will defer its ruling on the content of the notice and the timing of the notice and opt-in period. Instead, the court will require counsel for the parties to meet and confer in an effort to resolve, or at least narrow, this dispute.

As for the means to disseminate notice, the plaintiffs propose that "[e]lectronic notice via text message and email is the most appropriate and efficient way to send notice to the class in this case." Doc. 40 at 5. They argue that electronic communications are "the norm" and that the particular facts of this case warrant

electronic notice. Doc. 40 at 5.  Specifically, the plaintiffs posit that the potential class members may "move more frequently" but "[t]he one thing that remains constant is that we keep the same cell phone numbers" since their mobile phones are their primary means of communication. Doc. 40-1 at 32, 39, 53; Doc. 40-2 at 3. They also highlight that "Fantasia used text communication, through a group chat, as the primary method of communicating with the dancers." Doc. 40-1 at 32, 39, 53; Doc. 40-2 at 3.  Accordingly, the plaintiffs propose that "[t]he best way to get information to other dancers in this case would be through a text attachment, and then through email communication." Doc. 40-1 at 32, 39, 53; Doc. 40-2 at 3.  The defendants disagree and argue that emails and text messages are not appropriate and that any proposed notice should be mailed to the potential opt-in members. Doc. 49 at 11.

Considering the competing interests at play here, the court will permit electronic notification through email in addition to the traditional notice method by mail.  The benefits of a collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Hoffmann–La Roche, Inc*., 493 U.S. at 170.  Given the evidence before the court, the court agrees with the plaintiffs that permitting notice only through traditional mail would not accomplish the goal of accurate and timely notice and would run the risk that a material number of the putative class members fail to

receive notice.  The court therefore will permit the use of email.  Email addresses tend to remain constant and should be an effective and efficient method to contact potential plaintiffs.  And courts in the Eleventh Circuit commonly approve email notice to potential opt-in class members in FLSA cases. *See, e.g.*, *Bennett v. BT's on the River, LLC*, 2023 WL 2838076, at *7 (S.D. Fla. Jan. 31, 2023); *Cooper v. E. Coast Assemblers, Inc*., 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013); *Stuven v. Texas deBrazil (Tampa) Corp*., 20 Wage & Hour Cas. 2d (BNA) 1110, at *6 (M.D. Fla. 2013) (declining to impose a presumption that regular mail is the preferred method of notice and finding that email is not too intrusive); *Pittman v. Comfort Sys. USA (Se.), Inc*., 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) (concluding that "communication through email, in addition to regular mail, is fair and proper notice").

This being said, the court will not permit notice by text messaging at this time. "Unsolicited text messages have become a growing annoyance to society, so much so that Congress passed the Telephone Consumer Protection Act, in part, to curb the practice." *Bennett*, 2023 WL 2838076, at *7 (citing *Miller*, 2018 WL 305819, at *3) ("[S]ending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address.").  The plaintiffs will be permitted to raise the issue of text messages in a later motion if the first notices are undeliverable or

returned.

## IV. CONCLUSION

For these reasons, it is ORDERED that the Motion for Conditional Certification and to Facilitate Notice Pursuant to § 216(b) of the Fair Labor Standard Act (Doc. 40) is GRANTED in part and DENIED in part as follows:

1.    The motion is GRANTED to the extent that the court conditionally certifies this case as a collective action.

2.    The motion is DENIED to the extent that the court reserves ruling on the request for approval of the proposed notice, except that the court will permit electronic notification via email.

3.    Counsel for the parties are ORDERED to meet and confer on or before **August 6, 2024,** and engage in good faith efforts to resolve their differences regarding the content of the proposed notice and the timing issues associated with it. The parties are further ORDERED to jointly file a proposed notice on or before **August 12, 2024**.  If there are any areas of disagreement, the filing should detail (1) the contentions of each party, (2) the legal authority supporting those contentions, and (3) how each party proposed to resolve the dispute during the conference.

DONE and ORDERED on July 23, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

14